ORIGINAL

FILED

MAY 3 1 2012

U.S. COURT OF
FEDERAL CLAIMS

# In the United States Court of Federal Claims

No. 09-888 C
(Filed: May 31, 2012)

```
********************************        Subject Matter Jurisdiction; RCFC 12(b)(1); Back
DAVID ALBINO,                      *    Pay Claim; Fisher; Jan's Helicopter Service, Inc.;
                                   *    Failure to Allege Separation From Military; Plaintiff
            Plaintiff,             *    Not Within Class Entitled to Recover Under
                                   *    Military Pay Act; No Money-Mandating Claim;
v.                                 *    RCFC 12(b)(6); Promotion Claim; Equitable Relief
                                   *    Not Available; 28 U.S.C. § 1491(a)(2); No
THE UNITED STATES,                 *    Jurisdiction Under Administrative Procedure Act;
                                   *    Transfer to District Court Appropriate; 28 U.S.C.
            Defendant.             *    § 1631
********************************
```

David Albino, Madison, WI, pro se.

James R. Sweet, United States Department of Justice, Washington, DC, for defendant. Major
Mary E. Meek, of counsel.

## OPINION AND ORDER

**SWEENEY**, Judge

        Before the court are defendant's renewed motion to dismiss the first amended complaint
or, in the alternative, for judgment upon the administrative record and plaintiff's motion for
judgment upon the administrative record.  Plaintiff, a captain in the United States Army
("Army") Reserve Judge Advocate General's ("JAG") Corps, challenges a decision by the Army
Board for Correction of Military Records ("ABCMR") denying an application to correct his
military record by removing an unfavorable referred Officer Evaluation Report ("OER").
Plaintiff seeks various forms of equitable relief and, invoking the Military Pay Act, 37 U.S.C.
§ 204 (2006), asserts a back pay claim consisting of "the difference of basic pay and allowances
between a service member at the rank of Captain with four years active duty time . . . and that of
Major . . . ."  Am. Compl. ¶ 215.  Defendant moves to dismiss the amended complaint pursuant
to Rule 12(b) of the Rules of the United States Court of Federal Claims ("RCFC"), contending
that plaintiff cannot assert a claim for pay for unperformed duties at a rank–major–for which he
was not selected.[1]  For the reasons set forth below, defendant's renewed motion to dismiss is
granted and plaintiff's motion for judgment upon the administrative record is denied as moot.

---

        [1] Alternatively, defendant seeks judgment upon the administrative record pursuant to
RCFC 52.1, arguing that the ABCMR's decision was not arbitrary, capricious, contrary to law, or
unsupported by substantial evidence.  The court was not required to rule on this issue.

## I. FACTUAL BACKGROUND

In December 2003, plaintiff was mobilized with his unit, the 415th Civil Affairs Battalion.[2] AR 121, 158. Plaintiff served as an international law officer on a Civil Affairs Team, id. at 188, and was appointed to serve as government team chief for the 1st Infantry Division Minister for Governance and Minister for Internally Displaced Persons and Refugees, id. at 158. The battalion was deployed to Iraq as part of Operation Iraqi Freedom 2 in February 2004. Id. at 121, 158.

In March 2004, plaintiff was tasked with organizing a nongovernmental organization ("NGO") conference in an effort to persuade NGOs to consider working in areas of the 1st

---

[2] Although courts rely upon and assume as true the factual allegations set forth in a complaint for purposes of resolving RCFC 12(b) motions, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-19 (1982); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006), plaintiff's amended complaint cites to numerous portions of the administrative record. When ruling upon an RCFC 12(b)(6) motion, courts may consider certain matters outside the pleadings–materials incorporated by reference or integral to the claim, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned–without converting the motion into one for summary judgment. 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004). The court may, of course, address matters outside the pleadings when adjudicating an RCFC 12(b)(1) motion. Aviation Software, Inc. v. United States, 101 Fed. Cl. 656, 661 (2011). Thus, the undisputed facts are derived from the administrative record ("AR").

Plaintiff's motion, which was filed pursuant to RCFC 52.1, was accompanied by a separate statement of facts citing to portions of the administrative record and plaintiff's amended declaration. RCFC 52.1(c)(1) provides:

Absent an order by the court establishing a different procedure, a party may move for . . . judgment on the administrative record and must include in its motion or supporting memorandum a statement of facts that draws upon and cites to the portions of the administrative record that bear on the issues presented to the court.

Plaintiff did not comply with RCFC 52.1(c)(1) because his statement of facts was not included in his motion or supporting memorandum. The court did not establish a procedure that deviates from RCFC 52.1(c)(1) in this case. Consequently, the court declines to consider plaintiff's separate statement of facts. See OTI Am., Inc. v. United States, 73 Fed. Cl. 758, 766 n.19 (2006) (observing that the plaintiff, relying upon a summary judgment standard, "mistakenly filed a statement of facts" in support of its motion for judgment on the administrative record and explaining that summary judgment standards are not pertinent to judicial review of an administrative record).

Infantry Division below the Green Line.[3] Id. at 158. During the NGO conference, which was held on June 1, 2004, id. at 159, Dr. Liane Saunders, director of the Coalition Provisional Authority-North ("CPA-N"), asked plaintiff to travel to Irbil, Iraq, where he would act as her military liaison and receive available information from the Regional Advisor for Displaced Persons.[4] Id. at 159. The 1st Infantry Division "intended to use the liaison mission to gather intelligence on Kurd movements." Id.

On June 4, 2004, the commander of the battalion, Lieutenant Colonel Gregory P. Fischer, id. at 169, 173, directed plaintiff to submit weekly reports concerning refugees. Id. at 132. In a letter to plaintiff dated June 14, 2004, Lieutenant Colonel Fischer observed that plaintiff "submitted none of these reports." Id. Lieutenant Colonel Fischer also noted that he ordered plaintiff to brief the Chief of Staff and Chief of Operations on a plan to survey Internally Displaced Civilian settlements in the 1st Infantry Division area "on several occasions." Id. Plaintiff disobeyed this order, Lieutenant Colonel Fischer explained, when he departed to Irbil without conducting the briefings. Id. As a result of plaintiff's failure to obey orders, Lieutenant Colonel Fischer advised plaintiff that "the division staff was left unaware of [his] activities." Id. Consequently, Lieutenant Colonel Fischer reprimanded plaintiff, whose actions were deemed "an embarrassment to this battalion." Id. Lieutenant Colonel Fischer relieved plaintiff of his duties and advised plaintiff that "[i]f [he] show[ed] again . . . a predisposition to disregard specified tasks, [he] may receive a relief for cause officer evaluation form and/or face [charges under the Uniform Code of Military Justice]." Id.

Lieutenant Colonel Fischer reassigned plaintiff to another civil affairs battalion in Kirkuk, Iraq, on June 22, 2004. Id. at 225, 236. As a result of the reassignment and due to a change of rater, plaintiff was issued a referred OER for the period spanning December 1, 2003, through June 22, 2004. Id. at 307-09. In accordance with his prior battalion's published rating scheme, the battalion's executive officer, Major Wayne Doyle, served as plaintiff's rater and Lieutenant Colonel Fischer served as plaintiff's senior rater. Id. at 174, 188, 307-09.

In the "Performance and Potential Evaluation" portion of the OER, Major Doyle indicated that plaintiff's performance was unsatisfactory, explaining that plaintiff

was entrusted to coordinate two major efforts for the division. The first was a non-governmental agency conference which was designed to bring international assistance into the 1st Infantry Division area of operations. The second was an

---

[3] The Green Line "was the former defensive line to which Government of Iraq forces withdrew at around the time the U.S.-led coalition instituted a 'no-fly' zone north of the 36th parallel in respose to Iraq's suppression of the Kurdish uprising in 1991." AR 157 n.1.

[4] As a military liaison, plaintiff "would have been in a position to continue the work that CPA-N was doing in terms of Internally Displaced Persons . . . and to obtain the wealth of knowledge CPA-N had accumulated to date." AR 157.

effort to determine critical information requested by the division commanding general regarding the movement of the Kurdish population through northern Iraq, an[] issue of national importance.  In both cases, [plaintiff] required some assistance and, at times, repeated guidance, and was removed completely from one of these tasks.

Id. at 309.  Major Doyle noted that plaintiff, who was "capable in his field of legal functions and perform[ed] adequately under supervision," nevertheless possessed "a disposition to act independently of the chain of command and should not be advanced."  Id.  Additionally, Major Doyle indicated that plaintiff was not in compliance with height and weight standards and was unable to take the Army Physical Fitness Test during the evaluation period due to deployment for combat.  Id.

Lieutenant Colonel Fischer indicated in the "Senior Rater" portion of the OER that plaintiff should not be promoted.  Id.  He wrote:

> [Plaintiff's] performance was less than satisfactory.  Given two high profile tasks, he needed constant supervision.  The planning and execution of the division NGO conference would not have been done had it been left to [plaintiff].  Given the task of collecting information on Iraqi Displaced Persons Camps, [plaintiff] ignored orders to coordinate the effort and was recalled by the Commanding General and subsequently relieved of his duties and given a letter of reprimand.  [Plaintiff] also had difficulty distinguishing the duties of legal assistance to unit soldiers and providing legal assistance to the command, attempting both simultaneously, clearly stepping outside his assigned duties.  Given his inability to follow orders and the requirement for constant supervision, do not retain in the United States Army.

Id.  Lieutenant Colonel Fischer later recalled that it was "his practice . . . to receive support forms" and that he "verbally counseled [plaintiff] on a regular basis because [plaintiff] failed to perform or produce results."  Id. at 189.

Plaintiff was furnished a copy of the OER on July 1, 2004, but it was not accompanied by a proper referral memorandum.  Id. at 85, 188.  Upon receipt of the OER, plaintiff's behavior was characterized as "tantrum-like and belligerent," id. at 188; accord id. at 189, 192, and he refused to sign the OER, id. at 188-89, 192.  On August 22, 2004, the Army provided to plaintiff another copy of the OER, together with a proper referral memorandum.  Id. at 85.  The referral memorandum accompanying the OER contained a one-day deadline for plaintiff to submit a response because he had already seen the OER when it was initially issued to him in July.  Id. Plaintiff refused to sign the OER and never requested an enlargement of time within which to respond to it.  Id. at 192.

4

On October 13, 2006, plaintiff appealed the OER to the Deputy Chief of Staff for the Personnel Officer Special Review Board ("OSRB").[5] Id. at 239-52.  In his appeal, plaintiff challenged Major Doyle's "unsatisfactory" performance rating and Lieutenant Colonel Fischer's "do not promote" recommendation, and claimed that the OER "acted as a complete block to [his] future advancement . . . ." Id. at 240.  He also alleged that Lieutenant Colonel Fischer "intended that the OER serve as a basis for separation, a process preordained solely because of [Lieutenant Colonel] Fischer's prejudice and predisposition to vindictiveness." Id.; accord id. at 250-51 (alleging vindictiveness and racial bias on the part of Lieutenant Colonel Fischer); see also id. at 187 (restating plaintiff's contention that the OER was "unfair, unjust, and illegal containing subjective, inflammatory, and prejudicial statements that [were] vindictive and racially motivated").  Plaintiff requested, among other things, a complete removal of the OER from his record and an opportunity to be evaluated fairly on the merits without regard to his ethnicity. Id. at 252.

The OSRB conducted an inquiry, id. at 188-91, during which it interviewed Major Doyle, Lieutenant Colonel Fischer, id. at 188, and "[o]thers knowledgeable of the matter," id. at 189; see also id. at 189-91 (summarizing the substance of these interviews).  The OSRB also considered documentation submitted by plaintiff in support of his appeal. Id. at 185-86.  It ultimately concluded that the "materials submitted and discovered . . . were not sufficient to overcome the presumption of regularity to remove the OER." Id. at 195.  The OSRB did, however, "find several administrative errors" that required correction. Id.  Accordingly, the OSRB directed four administrative corrections to the OER, as well as two administrative corrections to a subsequent OER. Id. at 196.  It concluded that promotion consideration was not warranted. Id.

Plaintiff also challenged the OER through a commander's inquiry. See supra note 5.  The commander's inquiry, which concluded on January 28, 2007, was untimely and not completed in accordance with the applicable regulation.  AR 87.  Nevertheless, it resulted in a determination that several errors occurred. Id. at 174.  According to the commander's inquiry, the OER in question

> seem[ed] to have been influenced by intense pressure by [Colonel] Kamena[, Lieutenant Fischer's superior,] on [Lieutenant Colonel] Fischer and his [executive officer], Major Doyle.  It stem[med] in part from the confusion around whom, when and where was a Brief supposed to have been given on a CPA-North transition to [1st Infantry Division] to continue [Internally Displaced Person] Operations in most of the North; the continuation of [Internally Displaced Person]

---

[5] Established under the provisions of Department of the Army Memorandum 600-1 (Jan. 18, 1985), the OSRB adjudicates "[a]ppeals alleging bias, prejudice, inaccurate or unjust ratings, or any matter other than administrative error . . . ." Army Regulation 623-105, ¶ 6-6(i). According to plaintiff, he submitted his appeal to the OSRB "following numerous requests over the past two years for a Commander's Inquiry . . . requiring that Commanders look into alleged errors, injustices, and illegalities in OERs." AR 239.

Operations by the [1st Infantry Division] actually never occurred for whatever reason. [Lieutenant Colonel] Fischer apparently directed [plaintiff] to brief [Colonel] Kamena prior to departing for Irbil while [plaintiff] states that [Major] Gajewski ordered him to coordinate actions with the 1st Infantry Division [Chief of Operations] . . . upon arrival in Irbil. This was because of the delay in getting the trip started so time was becoming critical. [Plaintiff] was frustrated because [Lieutenant Colonel] Fischer had gone back and forth on whether the trip was to be by air or by convoy.

Id. at 174-75. Ultimately, the commander's inquiry concluded that the "OER contents, while very serious (substantive in nature), are supported by the chain of command . . . during the time in question." Id. at 173.

Plaintiff appealed the OSRB decision by filing an application for correction of military record with the ABCMR on October 5, 2008. Id. at 90-111. In a decision dated June 25, 2009, the ABCMR unanimously denied plaintiff's application, concluding that "[t]he evidence [did] not demonstrate the existence of a probable error or injustice." Id. at 89. The ABCMR determined that plaintiff's request for a commander's inquiry "was not handled in accordance with applicable regulation," but it concluded that the "absence of a timely Commanders' Inquiry [did] not change [plaintiff's] manner of performance or mitigate the fact that the rating officials provided a less than favorable rating of the applicant in the contested report." Id. at 87. It noted that plaintiff, who received the OER on two separation occasions, was afforded an opportunity to provide rebuttal comments but elected not to do so. Id. at 88. The ABCMR also determined that plaintiff did not provide any evidence showing that the OER did not reflect "the considered opinions and objective judgment of the rating officials at the time of preparation." Id. Moreover, the ABCMR concluded that plaintiff's claim that the OER reflected an incorrect rating chain was not supported by the evidence. Id. The ABCMR explained that, "[a]bsent evidence to show that the actual ratings provided on the contested [OEB] were flawed, in error, or factually incorrect[,] there [wa]s no basis to grant the relief requested nor [wa]s there a basis to provide a letter of nonrated period as requested." Id. It also concluded that there was no basis for plaintiff's request that he be promoted, stating: "The contested report contained administrative errors which were corrected by the OSRB, but these changes did not warrant promotion reconsideration due to the nature of the changes."[6] Id.

---

[6] Additionally, the ABCMR concluded that plaintiff failed to provide sufficient evidence showing that (1) nonreferral documents for unit vacancies in 2005 and 2006 were inaccurate or unjust, thereby not justifying their removal from plaintiff's record and (2) nonselect documentation for the 2007 and 2008 Army Mandatory Promotion Board for Major was inaccurate because plaintiff "was not among those officers selected for promotion to major . . . ." AR 88. In fact, the ABCMR determined, there was "no evidence in the available records" to support plaintiff's claims. Id.

## II. PROCEDURAL HISTORY

Plaintiff filed a pro se complaint in the United States Court of Federal Claims ("Court of Federal Claims") on December 28, 2009.[7]  Plaintiff then filed an amended complaint, wherein he alleges that he "is a commissioned officer with the rank of Captain . . . , United States Army Reserve, [JAG] Corps" and "currently serves as International Law Officer, 432nd Civil Affairs Battalion . . . , Green Bay, Wisconsin." Am. Compl. ¶ 7; accord Am. Decl. David Albino ("Albino Decl.")[8] ¶ 4.  Plaintiff asserts sixteen counts, see Am. Compl. ¶¶ 60-209, and alleges, among other things, that but for the challenged OER, he "would certainly have been promoted into the position of [a] higher grade [than] he already held," id. ¶ 155.  Plaintiff claims entitlement to $13,546.10 "in accumulated lost back pay and allowances" for four years, which constitutes the difference between basic pay and allowances at the ranks of captain and major, id. ¶ 215, and seeks orders from the court setting aside the ABCMR's final decision, id. ¶ 210, and directing the Army to (1) remove from his record the OER, together with all documents related to the OSRB and ABCMR decisions concerning the OER, id. ¶¶ 211, 213; (2) replace the OER with a letter of official nonrated time, id. ¶ 211; (3) "restore the original OER" with an evaluation period concluding June 22, 2005, id. ¶ 212; and (4) remove from his record "all documents and references to non-select promotion board decisions," id. ¶ 214.

---

[7]  The Court of Federal Claims holds pleadings of a pro se plaintiff to less stringent standards than those of litigants represented by counsel. Haines v. Kerner, 404 U.S. 519, 520 (1972).  Although he appears pro se, plaintiff is a lawyer and a member in good standing of the State Bar of Wisconsin.  Nevertheless, the court recognizes that "[e]ven a skilled lawyer who represents himself is at a disadvantage in contested litigation" because "[h]e is deprived of the judgment of an independent third party in framing the theory of the case . . . and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom." Kay v. Ehrler, 499 U.S. 432, 437 (1991).

Courts have "strained [their] proper role in adversary proceedings to the limit, searching . . . to see if plaintiff has a cause of action somewhere displayed." Ruderer v. United States, 412 F.2d 1285, 1292 (Ct. Cl. 1969).  Although plaintiff's pleadings are held to a less stringent standard, such leniency "with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." Minehan v. United States, 75 Fed. Cl. 249, 253 (2007); see also Kelley v. Sec'y, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[A] court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for pro se litigants only."); Bernard v. United States, 59 Fed. Cl. 497, 499 (noting that pro se plaintiffs are not excused from satisfying jurisdictional requirements), aff'd, 98 F. App'x 860 (Fed. Cir. 2004).  As the Court of Federal Claims stated in Demes v. United States, "[w]hile a court should be receptive to pro se plaintiffs and assist them, justice is ill-served when a jurist crosses the line from finder of fact to advocate." 52 Fed. Cl. 365, 369 (2002).

[8]  Plaintiff's amended declaration was appended to his amended complaint.

7

The court remanded the case to the ABCMR after plaintiff moved to supplement the administrative record with newly submitted evidence. See Albino v. United States, 93 Fed. Cl. 405, 409 (2010) (explaining that "the ABCMR should have an opportunity to evaluate plaintiff's evidence, all of which should have been previously included in the record"). On remand, the ABCMR denied plaintiff's application, AR 39, concluding that the additional documents plaintiff furnished (1) did not show that the ABCMR's prior determination was flawed or resulted in error or injustice and (2) showed that although plaintiff's "performance of duty subsequent to the contested OER was outstanding and that he had received an award for meritorious service," the "additional evidence [did] not show [that] the rating/comments in the contested OER were incorrect or unjust." Id. at 44. Because no basis for relief existed with respect to the contested OER, the ABCMR determined that there was "no basis on which to grant [plaintiff's] request to remove documents from his 2005/2006 unit vacancy board, remove nonselect documents from the 2007/2008 . . . mandatory promotion boards for major or to grant him promotion consideration . . . ." Id. The case returned to the Court of Federal Claims.

Thereafter, the court again remanded the case to the ABCMR for further consideration after the discovery of a DA Form 5500-R, "Body Fat Content Worksheet," that was absent from the administrative record and indicated that plaintiff, despite an Army finding to the contrary, did comply with Army height and weight standards. Order 1-2, Feb. 3, 2011. On March 22, 2011, the ABCMR determined that because plaintiff's DA Form 5500-R, "clearly show[ed] the contested OER contain[ed] an administrative error . . . [,] which contain[ed] the entry 'NO' indicating he did not meet the height and weight standards for his age[,] . . . that entry should be changed to reflect an entry of 'YES' . . . ." AR 7. This correction, the ABCMR explained, did not have an impact upon the remaining portions of the OER, which reflected the "opinions and objective judgment of the rating officials concerning other aspects of [plaintiff's] performance at the time of preparation." Id. at 8. Consequently, the ABCMR concluded that there was "no basis to grant [plaintiff's] request for removal of the contested OER or promotion reconsideration by a special selection board." Id.

The case again returned to the Court of Federal Claims, and the instant motions followed.

### III. DISCUSSION

Defendant urges dismissal of the complaint because "there is not a money-mandating statute that could provide monetary relief" in this case. Def.'s Mot. 7. In the absence of a monetary claim, defendant contends that the court lacks jurisdiction to provide any ancillary equitable relief. Plaintiff asserts that it is "well established that the Military Pay Act is a money-mandating statute and that claims for back pay based on the Military Pay Act are within the jurisdiction of the Court of Federal Claims." Pl.'s Mot. 8.

## A. The Court Lacks Jurisdiction Over the Amended Complaint

### 1. RCFC 12(b)(1) Motions to Dismiss

Defendant moves to dismiss plaintiff's complaint for lack of jurisdiction pursuant to RCFC 12(b)(1) and 12(b)(6). When deciding such a motion, the court, as previously noted, assumes all factual allegations set forth in the complaint are true and draws all reasonable inferences in the plaintiff's favor. Scheuer, 416 U.S. at 236; United Pac. Ins. Co., 464 F.3d at 1327-28. Because the court's "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion," Palmer v. United States, 168 F.3d 1310, 1313 (Fed. Cir. 1999), the court analyzes defendant's motion under RCFC 12(b)(1).

The burden of establishing the court's subject matter jurisdiction resides with the party seeking to invoke it, see McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936), and a plaintiff must establish jurisdiction by a preponderance of the evidence, Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). If the defendant or the court questions jurisdiction, the plaintiff cannot rely solely on allegations in the complaint but must bring forth relevant, adequate proof to establish jurisdiction. See McNutt, 298 U.S. at 189. When ruling upon a motion to dismiss for lack of subject matter jurisdiction, the court may examine relevant evidence in order to decide any factual disputes. See Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999); Reynolds, 846 F.2d at 747. If the court finds that it lacks subject matter jurisdiction, then it must dismiss the claim. Matthews v. United States, 72 Fed. Cl. 274, 278 (2006); see also RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### 2. Subject Matter Jurisdiction

Whether the court possesses jurisdiction to decide the merits of a case is a threshold matter. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998); see also Matthews, 72 Fed. Cl. at 278 (stating that subject matter jurisdiction is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case"). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868). The parties or the court sua sponte may challenge the court's subject matter jurisdiction at any time. Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006).

The ability of the Court of Federal Claims to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). A waiver of immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969).

9

Such an express waiver is found in the Tucker Act, which confers upon the Court of Federal Claims jurisdiction over claims based on money-mandating constitutional provisions, statutes, regulations, and executive orders.  28 U.S.C. § 1491(a)(1) (2006); United States v. Mitchell, 463 U.S. 206, 212-18 (1983).  However, the Tucker Act "is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 398 (1976).  Because the Tucker Act "is merely jurisdictional, . . . grant of a right of action must be made with specificity." Id. at 400.  Consequently, a plaintiff must identify a separate source of substantive law that creates a right to money damages.  Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc portion).[9]

### 3. Plaintiff's Back Pay Claim

The United States Court of Appeals for the Federal Circuit ("Federal Circuit") has instructed that the court's jurisdictional inquiry consists of the following "one-step process":

> When a complaint is filed alleging a Tucker Act claim based on a Constitutional provision, statute, or regulation, the trial court at the outset shall determine . . . whether the Constitutional provision, statute, or regulation is one that is money-mandating.

> If the court's conclusion is that the Constitutional provision, statute, or regulation meets the money-mandating test, the court shall declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course.  For purposes of the case before the trial court, the determination that the source is money-mandating shall be determinative both as to the question of the court's jurisdiction and thereafter as to the question of whether, on the merits, plaintiff has a money-mandating source on which to base his cause of action.

Fisher, 402 F.3d at 1173.  In Fisher, the Federal Circuit explained that this one-step process requires a determination that the statute, regulation, or constitutional provision that is the basis for the complaint (1) "'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s],'" id. (quoting Mitchell, 463 U.S. at 217), and (2) is "'reasonably amenable to the reading that it mandates a right of recovery in damages,'" id. at 1174 (quoting United States v. White Mountain Apache Tribe, 537 U.S. 465, 472-73 (2003)).  The Federal Circuit later summarized:

> [I]f the test described in Mitchell and White Mountain is satisfied and the plaintiff has made a nonfrivolous assertion that it is within the class of plaintiffs entitled to recover under the money-mandating source, the Court of Federal Claims has jurisdiction.  There is no further jurisdictional requirement that plaintiff make the

---

[9] All citations to Fisher are to the en banc portion of the decision.

additional nonfrivolous allegation that it is entitled to relief under the relevant
money-mandating source.

Jan's Helicopter Serv., Inc. v. FAA, 525 F.3d 1299, 1307 (Fed. Cir. 2008) (emphasis added);
accord id. at 1309; Fisher, 402 F.3d at 1173; see also Ralston Steel Corp. v. United States, 340
F.2d 663, 667-68 (Ct. Cl. 1965) (holding that "a claimant who says he is entitled to money from
the United States because a statute or a regulation grants him that right, in terms or by
implication, can properly come to the Court of Claims, at least if his claim is not frivolous, but
arguable"). The source upon which a plaintiff relies to invoke the court's jurisdiction "must, of
course, be money-mandating as to the particular class of plaintiffs." Greenlee County, Ariz. v.
United States, 487 F.3d 871, 876 n.2 (Fed. Cir. 2007) (emphasis added). Thus, if a statute is
reasonably amenable to a reading that is money-mandating and the plaintiff falls within the class
of plaintiffs entitled to recover under the statute, then the court possesses jurisdiction and can
proceed to the merits.

   "It is well established that the Military Pay Act is a money-mandating statute." Smith v.
Sec'y of the Army, 384 F.3d 1288, 1294 (Fed. Cir. 2004). Thus, the Mitchell and White
Mountain test, as described in Jan's Helicopter Service, Inc., is satisfied in this case. However,
as the Jan's Helicopter Service, Inc. court instructs, a plaintiff must also make a nonfrivolous
assertion that he is within the class of plaintiffs entitled to recover under the Military Pay Act.
525 F.3d at 1307. Plaintiff has not done so in this case.

   The Military Pay Act "provides for suit in the Court of Federal Claims when the military,
in violation of the Constitution, a statute, or a regulation, has denied military pay." Dysart v.
United States, 369 F.3d 1303, 1315 (Fed. Cir. 2004). The Court of Federal Claims has
explained:

      To properly invoke this Court's jurisdiction, Plaintiff must satisfy all the
      jurisdictional predicates of the Military Pay Act. The Military Pay Act entitles an
      individual who was unlawfully discharged to recover "money in the form of the
      pay that the plaintiff would have received but for the unlawful discharge." A
      military pay claim accrues on "the date on which the service member was denied
      the pay to which he claims entitlement." Consequently, an action for back pay
      under the Military Pay Act accrues at the time of a plaintiff's discharge or
      separation from active duty.

Fuentes v. United States, 100 Fed. Cl. 85, 90 (2011) (quoting Martinez v. United States, 333 F.3d
1295, 1303, 1314 (Fed. Cir. 2003) (en banc)) (emphasis added) (citations omitted). Here,
plaintiff primarily challenges the ABCMR's decision denying his application to remove the OER
from his record, Am. Compl. ¶ 1, and secondarily seeks what he describes as "lost back pay,"
which comprises the difference in pay between that which he received at the rank of captain and
that which he hoped to receive at the rank of major if he had been promoted, id. ¶ 215.

11

The court lacks jurisdiction over plaintiff's back pay claim.  First, the court lacks jurisdiction over a back pay claim that is predicated upon a promotion that plaintiff never received.  Knightly v. United States, 227 Ct. Cl. 767, 769 (1981) (stating that the predecessor court to the Court of Federal Claims "do[es] not have jurisdiction of a back pay claim predicated on a promotion not received").  Second, plaintiff fails to allege that he was unlawfully discharged or otherwise involuntarily separated from military service such that his back pay claim is money-mandating.

The Military Pay Act "is only money-mandating when a plaintiff is involuntarily separated from the Armed Forces."  Sinclair v. United States, 66 Fed. Cl. 487, 491 (2005) (citing Rigsbee v. United States, 226 F.3d 1376, 1378-79 (Fed. Cir. 2000)); see also Reilly v. United States, 93 Fed. Cl. 643, 648 (2010) (explaining that the Military Pay Act "applies to reserve officers, such as plaintiff, only when they are removed while on active duty"); Mendez v. United States, No. 11-160C, 2012 WL 266866, at *8 (Fed. Cl. Jan. 31, 2012) ("Having alleged that separation was improper, plaintiff pleads entitlement to pay and thereby invokes the Military Pay Act and the Court of Federal Claims' Tucker Act jurisdiction.").  Plaintiff alleges that he was on active duty at the time he filed suit in the Court of Federal Claims, see, e.g., Am. Compl. ¶ 7 ("Plaintiff . . . is a commissioned officer with the Rank of Captain . . . .  [Plaintiff] currently serves as International Law Officer, 432nd Civil Affairs Battalion . . . , Green Bay, Wisconsin." (emphasis added)); accord Albino Decl. ¶¶ 1 ("I am a commissioned officer with the rank of Captain . . . in the U.S. Army Reserve, [JAG] Corps.  I have served as a commissioned officer since 3 June 1997." (emphasis added)), 4 ("I currently serve as the Command Judge Advocate and International Law Officer, 432nd Civil Affairs Battalion, Green Bay, Wisconsin." (emphasis added)), and at no point does he seek back pay for duties he performed at the rank of captain due to an involuntary separation, see Am. Compl. ¶ 215.  Because plaintiff has not made a nonfrivolous assertion that he is within the class of plaintiffs entitled to recover under the Military Pay Act, viz., a service member who has been involuntarily separated from the armed services, see Jan's Helicopter Serv., Inc., 525 F.3d at 1309, plaintiff has not met his burden of establishing the court's jurisdiction over his back pay claim, Reynolds, 846 F.2d at 748; see also Bannum, Inc. v. United States, 56 Fed. Cl. 453, 462 (2003) (determining that a court cannot exercise jurisdiction over an unripe claim because it is "premised upon contingent future events that may not occur as anticipated, or indeed may not occur at all").

Furthermore, a back pay claim accrues on "the date on which the service member was denied the pay to which he claims entitlement."  Martinez, 333 F.3d at 1314.  Plaintiff's claim "accrued when the Army decided not to promote him," Chisolm v. United States, 82 Fed. Cl. 185, 198 (2008), but the statute of limitations period is tolled by operation of law until his discharge date, 50 U.S.C. app. § 526(a) (2006); Lowe v. United States, 79 Fed. Cl. 218, 224 (2007).  Since plaintiff has not alleged that he was discharged, his back pay claim is not ripe.  Dismissal of unripe claims is warranted.  See Benchmark Res. Corp. v. United States, 74 Fed. Cl. 458, 463 (2006) ("In holding a claim to be unripe, the court essentially is refusing to exercise jurisdiction over the case."); Crawford v. United States, 53 Fed. Cl. 191, 195 (2002) (dismissing without prejudice a claim due to lack of ripeness).

### 4.  Plaintiff's Promotion Claim and Requests for Equitable Relief

Turning to plaintiff's promotion claim and requests for equitable relief, the Tucker Act authorizes certain forms of equitable relief but does not confer jurisdiction upon the Court of Federal Claims to award equitable relief in the absence of a monetary claim.[10]  See 28 U.S.C. § 1491(a)(2) (enumerating equitable remedies that the court may order "[t]o provide an entire remedy and to complete the relief afforded by the judgment . . . as an incident of and collateral to any such judgment").  Plaintiff cites Dysart in support of his contention that the court possesses jurisdiction over his promotion claim because he invokes a money-mandating statute, the Military Pay Act.  Dysart merely recognizes that the Court of Federal Claims possesses jurisdiction to review promotion decisions when a proper Military Pay Act claim has been stated: "Because the Military Pay Act is a money-mandating statute, the general rule 'that one is not entitled to the benefit of a position until he has been duly appointed to it' is inapplicable.  In such cases, redress may be afforded for a promotion improperly denied."  369 F.3d at 1315 (footnote omitted) (citation omitted) (quoting Testan, 424 U.S. at 402).  Nothing in Dysart suggests that the court can provide equitable relief that is not ancillary to a monetary claim.  In the absence of a money-mandating claim, the court lacks jurisdiction over plaintiff's promotion claim and cannot award any equitable relief.

Lastly, plaintiff cites the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 (2006), in support of his contention that the court possesses jurisdiction over his promotion claim.  Am. Compl. ¶ 6.  The APA waives sovereign immunity only for claims "seeking relief other than money damages," 5 U.S.C. § 703, and it is not a money-mandating statute, Wopsock v. Natchees, 454 F.3d 1327, 1333 (Fed. Cir. 2006).  Consequently, the Court of Federal Claims lacks jurisdiction over APA claims.  See Martinez, 333 F.3d at 1313 (explaining that the Court of Federal Claims lacks APA jurisdiction to consider nonmonetary suits to correct military records).

In short, the court lacks jurisdiction over plaintiff's back pay claim because (1) plaintiff has not made a nonfrivolous assertion that he is within the class of plaintiffs entitled to recover under the Military Pay Act, see Jan's Helicopter Serv., Inc., 525 F.3d at 1307, and (2) it is predicated upon a promotion plaintiff did not receive, see Knightly, 227 Ct. Cl. at 769.  In the absence of a monetary claim, the court lacks jurisdiction over plaintiff's promotion claim and cannot award any equitable relief.

### B.  Assuming That the Court Possesses Jurisdiction Over Plaintiff's Back Pay Claim, Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted

Despite concluding that it lacks jurisdiction over plaintiff's back pay claim, the court finds utility in providing an alternative holding on the merits of that claim.  Assuming, arguendo,

---

[10]  Exceptions include claims brought pursuant to the Contract Disputes Act of 1978, see 28 U.S.C. § 1491(a)(2), and bid protests, see id. § 1491(b)(1)-(2).  Neither exception applies in this case.

that plaintiff's invocation of the Military Pay Act is sufficient to confer upon the court jurisdiction over his back pay claim, the court addresses whether his claim falls within the scope of the statute. As the <u>Fisher</u> court explained, "the consequence of a ruling by the court . . . that plaintiff's case does not fit within the scope of the source, is simply this: plaintiff loses on the merits for failing to state a claim on which relief can be granted." 402 F.3d at 1175-76.

An RCFC 12(b)(6) motion, such as the one advanced by defendant, tests the sufficiency of a complaint. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007); <u>see also</u> <u>RhinoCorps Ltd. Co. v. United States</u>, 87 Fed. Cl. 481, 492 (2009) ("A motion made under Rule 12(b)(6) challenges the legal theory of the complaint, not the sufficiency of any evidence that might be adduced."). The purpose of RCFC 12(b)(6) "is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." <u>Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.</u>, 988 F.2d 1157, 1160 (Fed. Cir. 1993) (citing <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-27 (1989)). When considering an RCFC 12(b)(6) motion, the court "must determine 'whether the claimant is entitled to offer evidence to support the claims,' not whether the claimant will ultimately prevail." <u>Chapman Law Firm Co. v. Greenleaf Constr. Co.</u>, 490 F.3d 934, 938 (Fed. Cir. 2007) (quoting <u>Scheuer</u>, 416 U.S. at 236). A failure to allege a cause of action upon which relief can be granted warrants a judgment on the merits rather than a dismissal for want of jurisdiction. <u>Litecubes, LLC v. N. Light Prods., Inc.</u>, 523 F.3d 1353, 1361 (Fed. Cir. 2008).

The court must determine whether the plaintiff can make "allegations plausibly suggesting (not merely consistent with)" a showing of entitlement to relief. <u>Twombly</u>, 550 U.S. at 557; <u>see also id.</u> at 570 (requiring that a complaint allege "enough facts to state a claim to relief that is plausible on its face"); <u>Cambridge v. United States</u>, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (stating that a plaintiff "must plead factual allegations that support a facially 'plausible' claim to relief"). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Twombly</u>, 550 U.S. at 556). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u>; <u>see also id.</u> (stating that a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (citing <u>Twombly</u>, 550 U.S. at 555)). Neither allegations "that are 'merely consistent with' a defendant's liability," <u>id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557), nor "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are sufficient, <u>id.</u> (citing <u>Twombly</u>, 550 U.S. at 555). Thus, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (citation omitted) (internal quotation marks omitted). A complaint need not contain "detailed" factual allegations, but those "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." <u>Id.</u>

Plaintiff fails to state a Military Pay Act claim upon which relief can be granted. He does not allege entitlement to back pay for any duties performed while serving as a captain, the rank to

14

which he was appointed. Instead, plaintiff seeks "lost back pay" at the rank of major, a rank to which he was not promoted. Am. Compl. ¶¶ 154, 215. The Federal Circuit has explained that, "[a]s a general matter, a service member is entitled only to the salary of the rank to which he is appointed and in which he serves. For that reason, in a challenge to a decision not to promote, the Military Pay Act ordinarily does not give rise to a right to the pay of the higher rank for which the plaintiff was not selected." Smith, 384 F.3d at 1294 (citation omitted).

The United States Supreme Court has held that the "established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it." Testan, 424 U.S. at 402. There exist two exceptions to this rule. Under the first exception, "an action for money arises under the Military Pay Act in the unusual case in which, on the plaintiff's legal theory, 'there is a clear-cut legal entitlement' to the promotion in question, i.e., he has satisfied all the legal requirements for promotion, but the military has refused to recognize his status." Smith, 394 F.3d at 1294 (citation omitted). Under the second exception, "an action for money arises under the Military Pay Act when the decision not to promote to service member leads to the service member's compelled discharge." Id. at 1295. Neither exception applies in this case.

With respect to the first exception, plaintiff does not demonstrate a clear-cut legal entitlement to a promotion. Plaintiff merely opines that he "would have been promoted" but for the purported illegal actions that gave rise to the OER because he "was the only person eligible to be promoted . . . ." Albino Decl. ¶ 52; accord Am. Compl. ¶ 155 ("Without having to compete against anyone else, [plaintiff] would certainly have been promoted into the position of higher grade he already held."). A promotion board ultimately has discretion to decide whether to promote or not promote plaintiff:

> A board may not recommend an officer for promotion unless a majority of the members of that board, after consideration by all members of that board of any adverse information about an officer that is provided to that board under the provisions of 10 U.S.C. section 14107, finds that the officer is among the officers best qualified for promotion to meet the needs of the Army consistent with the requirement of exemplary conduct set forth in 10 U.S.C. section 3583.

Am. Compl. Ex. A at 7-8 (containing a February 28, 2008 Memorandum for President and Members, Memorandum of Instructions). Although a promotion board could have recommended plaintiff for promotion while the OER remained in his record, it ultimately did not do so. Therefore, plaintiff did not have–and has not alleged–a clear-cut legal entitlement to a promotion even if the OER was not part of his record. See Reilly, 93 Fed. Cl. at 649 (explaining that a plaintiff's request for correction of military records does "not trigger the 'clear-cut right' exception to the general rule prohibiting awards of salary for increased rank").

With respect to the second exception, plaintiff challenges the ABCMR's decision denying his request to remove the OER, Am. Compl. ¶ 1, not a promotion board's decision that he should not be promoted. When he filed suit in the Court of Federal Claims, plaintiff had been serving

on active duty for at least five years after the date he received the OER.  Plaintiff alleges that he will be separated if he is ultimately not promoted, see id. ¶ 161, but plaintiff has failed to allege that his receipt of the OER compelled his discharge.

As previously noted, the Military Pay Act applies to service members who have been removed from active duty, see Reilly, 93 Fed. Cl. at 648, and plaintiff does not seek back pay for duties performed as a captain due to an involuntary separation.  He cites no statute or regulation that mandates pay for service never actually performed or a rank never attained.  Consequently, plaintiff fails to state a back play claim upon which relief can be granted.

Plaintiff's failure to state a back pay claim precludes the court from awarding any monetary relief.  Because no monetary relief can be awarded in this case, the court lacks jurisdiction under 28 U.S.C. § 1491(a)(2) to address plaintiff's promotion claim and order any form of nonmonetary relief related thereto.  See Smith, 384 F.3d at 1294-96; Reilly, 93 Fed. Cl. at 650.

### C.  Transfer of Plaintiff's Promotion Claim Is Appropriate

Plaintiff requests the transfer of his case to a district court if the court determines that it lacks jurisdiction. Am. Compl. ¶ 217.  "When a court lacks jurisdiction, the ordinary course is . . . to dismiss . . . ."  Phillips v. Seiter, 173 F.3d 609, 610 (7th Cir. 1999).  However, a court must transfer a claim over which it lacks jurisdiction to a court where it could have been brought under certain circumstances:

> Whenever a civil action is filed in a court as defined in section 610 of this title . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought.[11]

28 U.S.C. § 1631 (footnote added).  Thus, in order to transfer plaintiff's promotion claim, the court must determine that (1) it lacks subject matter jurisdiction; (2) at the time the case was filed, the claim could have been brought in the transferee court; and (3) transfer is in the interest of justice.  Id.; United States v. John C. Grimberg Co., 702 F.2d 1362, 1364 n.5, 1374 (Fed. Cir. 1983) (en banc).  All of these conditions must be satisfied.  Palacios v. United States, 100 Fed. Cl. 656, 658 (2011).  A decision to transfer ultimately rests within the sound discretion of the transferor court, and the court may decline to transfer the case "[i]f such transfer 'would nevertheless be futile given the weakness of plaintiff's case on the merits.'"  Faulkner v. United States, 43 Fed. Cl. 54, 56 (1999) (quoting Siegal v. United States, 38 Fed. Cl. 386, 390 (1997)).

---

[11]  Under 28 U.S.C. § 610, the term "court" includes "the courts of appeals and district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, the District Court of the Virgin Islands, the United States Court of Federal Claims, and the Court of International Trade."

Additionally, section 1631 "allows for the transfer of less than all of the claims in a civil action" because, as the Federal Circuit explained, "Congress clearly recognized that a transfer of an action under § 1631 may be granted 'in whole or in part.'"  United States v. Cnty. of Cook, Ill., 170 F.3d 1084, 1089 (Fed. Cir. 1999).

The first requirement of section 1631 is satisfied.  The court determined that it lacks jurisdiction over plaintiff's back pay and promotion claims.  Even if it had jurisdiction to adjudicate plaintiff's back pay claim, which would be dismissed on the merits as explained in Part III.B, supra, the court would still lack jurisdiction over plaintiff's promotion claim.

The second requirement of section 1631 is also satisfied.  Decisions of boards for correction of military records are subject to review under the APA.  See Frizelle v. Slater, 111 F.3d 172, 176 (D.C. Cir. 1997).  Therefore, a district court could adjudicate plaintiff's promotion claim.  However, section 10(c) of the APA provides for judicial review in the district courts of "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. §704 (emphasis added).  Thus, "[i]f an action under the Tucker Act in the Court of Federal Claims would provide an adequate remedy for [plaintiff's] claims, the district court would be barred by 5 U.S.C. § 704 from entertaining his action under the APA . . . ."  Smith, 384 F.3d at 1292.  In this case, plaintiff's promotion claim does "not presage a present entitlement to a monetary award in any way, let alone one for 'damages.'"  Reilly, 93 Fed. Cl. at 652.  Because the court cannot provide any remedy to address plaintiff's promotion claim, the district court is not divested of its APA jurisdiction to review the claim.  Cf. Martinez, 333 F.3d at 1320 (declining to transfer an action to the district court because it was divested of APA jurisdiction over claims where an adequate remedy existed in the Court of Federal Claims).

Lastly, the court must address whether transfer is in the interest of justice.  According to the Federal Circuit, "[t]he phrase 'if it is in the interest of justice' relates to claims which are nonfrivolous and as such should be decided on the merits."  Galloway Farms, Inc. v. United States, 834 F.2d 998, 1000 (Fed. Cir. 1987) (citing Zinger Constr. Co. v. United States, 753 F.2d 1053, 1055 (Fed. Cir. 1985)).  As the United States Court of Appeals for the Ninth Circuit observed, "[n]ormally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is 'time consuming and justice-defeating.'"  Miller v. Hambrick, 905 F.2d 259, 262 (9th Cir. 1990) (quoting Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467 (1962)).  The court concludes that the interests of justice are served by transferring plaintiff's promotion claim, which appears to be nonfrivolous and can be reviewed by a district court under the APA.  Although plaintiff does not request transfer to a particular district court, venue in the United States District Court for the District of Columbia is proper.  See 28 U.S.C. § 1391(e)(1); Roberts v. United States, 98 Fed. Cl. 130, 143-44 (2011); Reilly, 93 Fed. Cl. at 653; Schmidt v. United States, 89 Fed. Cl. 111, 125 (2009).

## IV.  CONCLUSION

For the reasons set forth above, defendant's renewed motion to dismiss is **GRANTED** and plaintiff's motion for judgment upon the administrative record is **DENIED AS MOOT**.  The clerk is directed to **DISMISS WITHOUT PREJUDICE** those portions of plaintiff's pro se amended complaint pertaining to his back pay claim and to enter judgment with respect to the back pay claim accordingly.  Pursuant to 28 U.S.C. § 1631, the court **TRANSFERS** the remainder of the amended complaint, which consists of plaintiff's promotion claim seeking APA review of the ABCMR's decision, to the United States District Court for the District of Columbia.  No costs.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Judge